UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CAROLYN A. NEAL,
    PLAINTIFF

VS.

COMMISSIONER OF
SOCIAL SECURITY,
    DEFENDANT

CASE NO. 1:08-CV-00512
(BARRETT, J.)
(HOGAN, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff filed her application for disability insurance benefits (DIB) in July, 2003. She alleged an onset date of August 27, 2001. She amended her onset date to January 8, 2003. Plaintiff's application was denied, both initially and upon reconsideration. Plaintiff then requested and obtained a hearing before an Administrative Law Judge (ALJ) at Columbus, Ohio on November 9, 2006. At the hearing, Plaintiff, who was represented by counsel, testified as did Vocational Expert (VE), Carl W. Hartung, M.R.C. Following an unfavorable decision in February, 2007, Plaintiff processed an appeal to the Appeals Council, which refused review in June, 2008. Plaintiff then filed her Complaint with this Court in August, 2008, seeking judicial review of the Social Security Administration's final decision denying her benefits.

## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ made three errors prejudicial to her case. She first argues that the ALJ erred by failing to give controlling weight to the opinions of plaintiff's treating physician, Dr. Schreibman and conversely, by giving too much weight to the opinion of one-time examining physician, Dr. Fritzhand. In her second assignment of error plaintiff argues that the ALJ failed to properly evaluate her credibility and subjective reports of pain. Finally, Plaintiff contends that the ALJ erred by relying on the VE's responses to an improper hypothetical that did not properly describe plaintiff's work-related limitations.

## MEDICAL RECORDS AND OPINIONS

Plaintiff began treating at the Community Health Clinic at Highland County Hospital in 1999 due to chronic back pain. An EMG performed in June 2000 revealed moderately severe right peroneal palsy, but was otherwise normal. (Tr. 494). There was no evidence of lumbosacral radiculopathy or other entrapment/neuropathy. *Id.* Her primary care physician was Paul Schreibman, M.D. She also treated with Certified Nurse Practitioner (C.N.P.) Raymond Mick. On November 20, 2006, Dr. Schreibman, opined that Plaintiff was "disabled and not able to work due to her many health problems." He reported that Plaintiff had chronic back pain with degenerative disease of the thoracic and lumbar spine, and this limited her ability to balance, stoop, kneel, crouch, crawl, and sit for any length of time. He further reported that her Crohn's disease limited her ability to sit for any length of time, and her poorly controlled diabetes made her symptoms worse. He also listed two other factors that limited her activity, COPD (chronic obstructive pulmonary disease), and CAD (coronary artery disease). Dr. Schreibman reported that Plaintiff's condition reached a debilitating state in 2003, and she had progressively worsened since then. (Tr. 542-43).

Also on November 20, 2006, Dr. Schreibman completed an residual physical functional capacity assessment. Dr. Schreibman opined that Plaintiff could occasionally and frequently lift less that 10 pounds; stand and/or walk less than 2 hours in a workday; sit less than 6 hours in workday, and had to lie down periodically to decrease pressure on the spine; and she was limited in her ability to push and/or pull with her lower extremities. He based his conclusions on Plaintiff's degenerative disease of the thoracic and lumbar spine with chronic back pain; degenerative changes of Plaintiff's left mid foot; labile hypertension; Crohn's disease; poorly controlled diabetes; obesity; COPD; and CAD/ischemia. Dr. Schreibman also opined that Plaintiff could never climb, balance, kneel, crouch, or crawl, and only occasionally stoop. She was limited in her ability to reach, handle, finger, and feel, due to bilateral CTS (carpel tunnel syndrome) and suspected rotator cuff tear. Dr. Schreibman opined that Plaintiff should avoid all exposure to extreme cold and heat, fumes, and hazards; avoid even moderate exposure to wetness

2

and vibration; and avoid concentrated exposure to humidity. He reported that Plaintiff's respiratory distress could be aggravated by cold, heat, humidity, and exposure to fumes, and movement and or vibration could aggravate her degenerative spinal condition. (Tr. 558-65).

Treatment notes from Nurse Practitioner Mick include findings of abnormal breath sounds, edema in lower extremities, poor posterior abduction, left shoulder tenderness, and left heel erythematous. (Tr. 352-87). On May 8, 2006, Nurse Practitioner Mick, made findings similar to Dr. Schreibman's opinion. (Tr. 500-507). On August 28, 2006, Plaintiff complained to Nurse Practitioner Mick of swelling in her thighs, and was noted to have edema. (Tr. 527). She complained she was coughing a lot and had soreness in her chest. *Id.* Nurse practitioner Mick also reported that Plaintiff's diabetes and hypertension were well controlled. *Id.* On October 11, 2006, Nurse Practitioner Mick treated Plaintiff with Avelox, due to complaints of chest congestion and pain in her rib cage, similar to when she had previously had pneumonia. (Tr. 526). On October 23, 2006, Plaintiff continued to have congestion. (Tr. 525). Plaintiff also complained of chest pain and left arm pain when she carried a basket of clothing, and indicated that she took nitroglycerin for it. *Id.* She was diagnosed with atypical chest pain. *Id.*

Due to an abnormal stress test, Plaintiff was referred to Joel Reginelli, M.D., a cardiologist, in May 2006. (Tr. 354, 458). Dr. Reginelli indicated that Plaintiff had come to see him for shortness of breath and chest discomfort. (Tr. 389-91). He reported that Plaintiff had been experiencing worsening dyspnea (shortness of breath) on exertion as well as some mid sternal chest discomfort over the last several months. *Id.* Following examination, Dr. Reginelli believed it was reasonable to perform angiography to rule out any evidence of coronary disease. *Id.* On May 31, 2006, Plaintiff underwent a cardiac angiography with stent placement to the right coronary artery. (Tr. 508, 532). Plaintiff was noted to have mild disease involving her left coronary system, but there was a high-grade stenosis in the distal right coronary artery. (Tr. 508). On June 6, 2006, Dr. Reginelli reported that Plaintiff noticed improvement in her shortness of breath and chest pain since the procedure, although not complete resolution. *Id.*

In August 2000, Plaintiff saw Thomas Matrka, M.D. due to back, right knee and right lower extremity pain. (Tr. 252). She underwent an epidural steroid injection. (Tr. 476). In June 2001, Plaintiff complained of numbness and tingling in her right leg. (Tr. 250). Dr.

3

Matrka discussed the likelihood of tendinitis, and Plaintiff was to try over the counter supports. *Id.* Plaintiff also complained of left upper extremity pain, numbness, and tingling; the likelihood of CTS was discussed, and Plaintiff was to wear a night splint. *Id.* Dr. Matrka restricted Plaintiff from excessive stair climbing. (Tr. 480). By October 2001, Plaintiff reported some improvement. (Tr. 250).

Plaintiff treated with internist, Thomas Meyers, M.D., from August 2001 to September 2003. (Tr. 264-75). His records reflect that Plaintiff was treated for low back pain, chest congestion, and breathing problems. In September 2003, his diagnosis included hypertension, decreased thyroid, questionable COPD and lower back pain. (Tr. 258).

Martin Fritzhand, M.D. conducted a consultative examination of plaintiff on November 26, 2003. Plaintiff reported a history of shortness of breath, intermittent pain in the substernal area, and hypertension. Examination revealed Plaintiff was 5' 3" and weighed 221 pounds. Dr. Fritzhand reported she was "massively obese" she ambulated with a normal gait and could forward bend without difficulty. Plaintiff was comfortable in the sitting and supine positions and her breath sounds were clear. There was no clinical evidence of congestive heart failure. Plaintiff's peripheral vascular status was excellent. She had no clinical end-organ damage secondary to hypertension. Her blood pressure was uncontrolled, and she was advised to see a physician as soon as possible. Range of motion studies were normal in Plaintiff's cervical spine, bilateral shoulders, elbows, wrists, hands, fingers, hips, knees, and ankles. Plaintiff had some reduced dorsolumbar extension, but flexion and lateral flexion were normal. She had normal muscle strength, and there was no joint abnormalities. Plaintiff's grasp strength and manipulation were well-preserved bilaterally. There was no muscle weakness in the lower extremities. Plaintiff's left calf was ½ inch smaller than the right and she had diminished sensation over the lower extremities. Spirometric test results were within normal limits. Dr. Fritzhand diagnosed Plaintiff with obesity, hypertension, COPD, and degenerative disc disease of the lumbar spine. He opined that Plaintiff appeared capable of performing "at least a mild amount" of ambulating, standing, bending, stooping, and lifting heavy objects. She had no difficulty reaching, grasping, or handling heavy objects. She would do best in a dust free environment. (Tr. 281-93). Pulmonary function studies showed normal breathing. (Tr. 288-

4

289).

State agency reviewing physician, Eli N. Perencevich, D.O. opined on December 15, 2003, that Plaintiff could perform medium exertion work and, due to COPD, she should be in a dust free environment. He considered Plaintiff's obesity, low back pain, hypertension, and diminished extension of the spine to 20 degrees. (Tr. 294-98). On April 6, 2004, Maria P. Congbalay, M.D., another state agency reviewing physician, affirmed Dr. Perencevich's opinion. (Tr. 298).

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that she was born October 25, 1955, making her 51 years old on the date of the hearing. She completed the ninth grade, but left school due to getting married. She did not pass the GED test. She has no vocational training. She can read and write fairly well. She is married with four children. All of her children are grown. She lives in a first floor apartment with her husband. Plaintiff smoked for about 35 years prior to quitting 5 months prior to the hearing.

Plaintiff testified that she could not work due to chest pain, shortness of breath, arthritis of the spine, degenerative disc disease, CTS, and pain in her left shoulder and legs. She reported that she had chest pain off and on for the last 3 to 4 years, for which she took nitroglycerin. She testified that, when she first underwent angioplasty, she did not take nitroglycerin as often, but in the last couple weeks, she took it 3 to 4 times a week.

Plaintiff further testified that she experienced shortness of breath with any type of activity, and sometimes, from no activity at all. She stated that she had been this way since November 2001, when she was placed on a ventilator. In 2003, her blood pressure started getting "really, really bad" and her lungs were congested. Her left arm and shoulder pain began in the last couple of months.

Plaintiff testified that some of her medications made her feel "foggy-headed." They also make her feel cold and she needs to rest. She testified that she was limited in her ability to walk, sit, and lift.

As to her activities of daily living, Plaintiff testified that she washed dishes, took care of

her per personal hygiene, went grocery shopping with her daughter, dusted, listened to audio books, watched television, read, and spent time with her 6 grandchildren. (Tr. 600-02).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ's hypothetical question to the VE assumed an individual who has the residual functional capacity to occasionally lift 25 pounds and frequently lift 15 pounds; stand and walk for 2 hours at a time for a total of 4 hours in an 8-hour day. The hypothetical individual would have no limitations in terms of sitting, but bending and stooping were limited. The hypothetical individual would need a dust-free environment. The VE responded that this person could not perform her past jobs as an nurses assistant and order picker as those jobs are customarily performed and described in the *Dictionary of Occupational Titles.*

The VE testified that there were approximately 5,650 light, unskilled jobs in the regional economy that such an individual could perform, including 1,500 jobs as a cashier, 166 jobs as a counter or rental clerk, 800 jobs as a retail sales person, and 133 jobs as a file clerk. With the limitations reported by Dr. Schreibman, the hypothetical individual would be limited to sedentary work. (Tr. 609-615).

## THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff met the insured-status requirement for DIB eligibility through December 31, 2006. The ALJ concluded that Plaintiff has the severe impairments of chronic obstructive pulmonary disease ("COPD"), hypertension, hyperlipidemia; degenerative disc disease of the thoracic and lumbar spine, diabetes mellitus, gastroesophageal reflux disease ("GERD") and obesity. The ALJ further found these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work with the following restrictions: She can lift and carry up to 25 pounds occasionally and 15 pounds frequently; sit without limitation; and stand and/or walk for at least four hours of an eight-hour day. She can bend and stoop on an occasional basis. She should avoid exposure to dust in the workplace. The ALJ next found Plaintiff is not capable of performing her past

6

relevant work as a nursing assistant and order picker, as typically performed in the economy. The ALJ then used section 202.11 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and concluded that there is a significant number of jobs in the national economy that Plaintiff is capable of performing. Therefore, the ALJ found that Plaintiff was not disabled and unable to receive DIB.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in

7

substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley* v. *Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk* v. *Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied, 461* U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen*, No. 876189, slip op. at 4 (6th Cir. Oct. 28, 1988). An impairment will be considered non severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,* 773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler,* 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born* v. *Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch* v. *Richardson,* 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon* v. *Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson* v. *Secretary of Health & Human Services,* 735 F.2d 962,964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole* v. *Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of disability. *Id.,* § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an impairment or a combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.,* § 200.00(e)(2). If an individual suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but must rely on other evidence to

9

carry his burden. *Abbott v. Sullivan,* 905 F.2d 918, 926-27 (6th Cir. 1990); *Damron v. Secretary of H.H.S.,* 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). The existence of a minor non-exertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment "significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.,* 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.* 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.,* 801 F.2d 794, 796 (6th Cir. 1986).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson v. Secretary of H.H.S.,* 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson,* 735 F.2d at 964; *Kirk,* 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris,* 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger,* 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S,* 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in

10

all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky* v. *Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley* v. *Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe* v. *Weinberger,* 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley* v. *Secretary of H.H.S.,* 39F.3d 115, 118 (6th Cir. 1994).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk* v. *Secretary of H.H.S.* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan* v. *Secretary of H.H.S.,* 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky* v. *Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones* v. *Secretary of H.H.S.,* 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require ... 'objective evidence of the pain itself.'" *Duncan,* 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiffs activities, the effect of plaintiffs medications and other treatments for pain, and the recorded observations of pain by plaintiffs physicians. *Felisky,* 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King* v. *Heckler,* 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella* v. *Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must

articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky, 35* F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst* v. *Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir.1985)(citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

"In general, the opinions of treating physicians are accorded greater weight those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985); *Lashley* v. *Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler,* 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters,* 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris,* 756 F.2d at 435. *See also Cohen* v. *Secretary of H.H.S.,* 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a non examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walter v. Commissioner,* 127 F.3d 525, 529 (6th Cir. 1997); *Shelman,* 821 F.2d at 321.

12

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

Plaintiff contends that the ALJ erred by rejecting the opinion of her treating physician, Dr. Schreibman, and by crediting the opinion of Dr. Fritzhand, a one-time examining physician. Plaintiff asserts that the ALJ failed to apply the correct legal criteria to her evaluation of Dr.

13

Schreibman's opinions under 404.1527(d) and Ruling 96-2p. According to Plaintiff, the ALJ's decision fails to provide a valid reason for rejecting Dr. Schreibman's opinion. Plaintiff also asserts the ALJ erred by not finding plaintiff to be disabled based on the Grids.

The Commissioner maintains that the ALJ properly evaluated the medical source opinions of record and correctly found that Dr. Schreibman's opinion was unsupported by objective clinical findings and was inconsistent with other substantial evidence of record.

The ALJ began her discussion of Plaintiff's RFC by stating, in part, that, "Opinion evidence has also been considered in accordance with the requirements of 20 C.F.R. §404.1527 and SIRS [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 22). The ALJ did not separately describe the legal criteria set forth in these Regulations and discussed in these Rulings. The Court must therefore scrutinize the ALJ's decision to determine whether she applied the correct legal criteria when evaluating the medical source opinions. *See Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was treated by Dr. Schreibman from 1999 through at least November 2006. (Tr. 542). As noted above, on November 20, 2006, Dr. Schreibman, opined that Plaintiff was "disabled and not able to work due to her many health problems." Plaintiff contends that Dr. Schreibman's opinions limit her to sedentary work. Dr. Schreibman diagnosed degenerative disease of the thoracic and lumbar spine with chronic back pain; degenerative changes of Plaintiff's left mid foot; labile hypertension; Crohn's disease; poorly controlled diabetes; obesity; COPD; and CAD/ischemia. (Tr. 542-43; 558-65).

The ALJ declined to give controlling weight to the opinions of Dr. Schreibman, stating:

Dr. Paul A. Schreibman, Ms. Neal's treating physician, completed a form regarding Ms. Neal's work capacity on November 20, 2006 (Exhibit 37F). Dr. Schreibman stated that Ms. Neal could lift and carry less than 10 pounds; stand and/or walk for less than two hours of an eight-hour day; and sit for less than five hours of an eight-hour day. He determined that she was limited in the use of her lower extremities and could not climb, balance, kneel, crouch, or crawl. He indicated that she could stoop on an occasional basis. Dr. Schreibman opined that Ms. Neal was limited in her ability to reach, handle, finger, and feel. He stated that she should avoid all exposure to temperature extremes, hazards, fumes, chemicals, dusts, gases, and odors; moderate exposure to vibration; and concentrated exposure to humidity. Dr. Schreibman's opinion is consistent with a treatment note of the same date that indicated that Ms. Neal would not be able to

14

perform any work. Raymond Mick, a certified nurse practitioner, who works with
Dr. Schreibman, also completed a form regarding Ms. Neal's work capacity and
made findings essentially the same as Dr. Schreibman's (Exhibit 30F). However,
Dr. Schreibman and Mr. Mick's opinions are not supported by earlier treatment
notes and are contrary to the weight of the evidence. For these reasons, Dr.
Schreibman and Mr. Mick's opinions are assigned less weight. Furthermore, it is
noted that a finding that an individual is "disabled" or "unable to work," is an
administrative finding and is an issue reserved to the Commissioner. Medical
conclusions on these issues must not be disregarded; but cannot be entitled to
controlling weight or even given special significance, even when offered by a
treating source (SSR 96-5p).

(Tr. 23). The ALJ gave "full weight" to the opinions of Dr. Fritzhand, in this matter:

Dr. Martin Fritzhand performed a consultative medical examination of Ms. Neal
on November 26, 2003 (Exhibit 17F). Dr. Fritzhand diagnosed Ms. Neal with
obesity, hypertension, COPD, and degenerative disc disease of the lumbar spine.
He opined that Ms. Neal would be able to do a "mild' amount" of ambulating,
standing, bending, stooping, and lifting heavy objects. He determined that she
should work in a dust-free work environment. Dr. Fritzhand's opinion is
consistent with the evidence of record and is entitled to full weight.

(*Id.*)

Plaintiff is correct that the ALJ erred by only applying the standards to determine if Dr. Schreibman's opinion was entitled to controlling weight under the treating physician rule and failed to apply the remaining factors required by the Regulations.

The ALJ and the Commissioner are correct in noting that the ultimata decision of disability is one reserved to the Commissioner. Therefore, to the extent that Dr. Schreibman concluded plaintiff was disabled, the ALJ was not bound to accept his opinion on the ultimate issue. Nevertheless, the Regulations require controlling weight to a treating physician's opinion when it is both well supported by medically acceptable evidence and not inconsistent with other substantial evidence of record. *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §404.1527(d)(2). The ALJ failed to specify on the record what evidence countervailing evidence supported the conclusion that Dr. Schreibman's opinion was not entitled to controlling weight. The record is replete with over ten years of treatment notes, with notes

15

from a three year period clearly attributable to the community health practice where plaint6iff was a patient seen by both Dr. Schreibman and C.N.P. Mick. ( See e.g. Tr. 352-387). Moreover, while the ALJ determined that Dr. Fritzhand's opinion was entitled to full weight, she fails to set forth with any specificity the evidence that supports his opinion. In addition, Dr. Fritzhand opines that plaintiff "can do a mild amount of ambulating, standing, bending, stooping, and lifting heavy objects" but does not opine as to any specific limits on those work-related activities. On the record before this Court, the ALJ's decision appears to conjure plaintiff's sitting, walking, lifting and other exertional limitations from whole cloth.

The ALJ also erred by failing to consider Dr. Schreibman's opinion using all the factors set forth in the Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544. The ALJ did not specifically refer to any of these factors or to the Regulations, 20 C.F.R. §404.1527(d)(3)-(5), when weighing Dr. Schreibman's opinion.

The Regulations provide in part that:

> Adjudicators must remember that a finding that a treating source's medical opinion is not well-supported by medically acceptable clinical and laboratory techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527.... In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p. .

The medical record contains an EMG study showing right peroneal palsy (Tr. 494), causing leg pain; treatment records from Dr. Reginelli show chest pain and shortness of breath following placement of the stent in the heart artery. Indeed, Dr. Reginelli's 2006 evaluation written before he performed the heart procedure and stent placement details 14 diagnosable conditions and over 20 medications which plaintiff takes on a daily basis. THE ALJ utterly

16

failed to address the weight to be given to this opinion or its impact plaintiff's RFC as a whole. The Regulations provide in part: "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give to that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion...." 20 C.F.R. §404.1527(d)(3). During Dr. Fritzhand's 2003 examination, he specifically found that the left calf was smaller than the right one and that the pinprick and light touch were diminished over the legs. (Tr. 283). The ALJ stated at the hearing that Dr. Fritzhand's residual functional capacity at Tr. 284 was "not terribly specific." (Tr. 610). Accordingly, Plaintiff's's challenges to the ALJ's evaluation of Dr. Schreibman's and Dr. Fritzhand's opinions are well taken.

Similarly, the ALJ failed to properly consider the opinion of Certified Nurse Practitioner Mick as required by the Regulations. Nurse Practitioner Mick diagnosed Plaintiff with degenerative disease of the thoracic and lumbar spine with chronic back pain; degenerative changes of Plaintiff's left mid foot; labile hypertension; history of Crohn's disease; poorly controlled diabetes; COPD; and ischemia on the April 2006 stress test. (Tr. 501-02). SSR 06-03P clarifies how the Commissioner is to consider opinions and other evidence from sources who are not "acceptable medical sources." SSR 06-03p, 2006 WL 2329939. The Ruling notes:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as chiropractors ... have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists. Opinions from these medical sources who are not technically deemed 'acceptable medical sources,' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file.

*Id.* at *4. Further, Ruling 06-03p explains that opinions from non-medical sources who, in their professional capacity, have seen the claimant should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion. *See Martin v. Barnhart*, 470 F. Supp.2d 1324, 1328-29 (D. Utah 2006) (citing Ruling 06-03p, 2006 WL 2329939 at *5-6). Finally, this Ruling states that:

17

> [a]lthough there is a distinction between what an adjudicator must
> consider and what the adjudicator must explain in the disability
> determination or decision, the adjudicator generally should explain the
> weight given to opinions for these 'other sources,' or otherwise ensure that
> the discussion of the evidence in the determination or decision allows a
> claimant or subsequent reviewer to follow the adjudicator's reasoning,
> when such opinions may have an effect on the outcome of the case.

SSR 06-03P, 2006 WL 2329939 at *7. The ALJ's decision neither considers nor mentions the supportability or consistency of Certified Nurse Practitioner Mick's opinion, and does not refer to any other regulatory factor as a ground for rejecting his opinions.

Plaintiff further contends the ALJ erred by not finding her disabled under Grid rule 201.10, which provides a finding of disability for a claimant limited to sedentary work, who is of advanced age with a limited education. Whether plaintiff is in fact limited to sedentary work necessarily depends on the weight ultimately ascribed to Dr. Schreibman's opinion on plaintiff's ability to lift, sit, stand, walk, etc. and plaintiff's RFC. Because this matter should be remanded for a determination of the weight to be afforded Dr. Schreibman's opinion, the Court may not at this juncture reverse this matter outright for an award of benefits based on a finding of disability under the grids. *Faucher*, 17 F.3d at 176. In light of the above review, and the resulting need for remand of this case, further analysis of Plaintiff's remaining contentions is unwarranted.

For these reasons, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed and remanded pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.

Date: 9/2/09

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS REPORT & RECOMMENDATION

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), ( C) or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).